[Civ. No. 41192. First Dist., Div. One. Jan. 23, 1979.]

ROBERT BRADFIELD, Plaintiff and Appellant, v.
TRANS WORLD AIRLINES, INC., Defendant and Respondent.

## Counsel

Nichols, Williams, Morgan & Digardi and Edward M. Digardi for Plaintiff and Appellant.

Bronson, Bronson & McKinnon and Steven L. Sumnick for Defendant and Respondent.

## Opinion

**NEWSOM, J.**—Appellant Bradfield was injured on a Trans World Airlines, Inc. (hereafter TWA) flight enroute from San Francisco to Paris when, while he was descending the stairs of the first class section of a Boeing 747, the airplane encountered turbulence and he fell down the stairs. He was at the time an economy class passenger visiting the first class area, either on his own initiative or at the company's behest—depending on one's view of the evidence. At the time of the accident he was in stocking feet, entirely sober but suffering from a neck injury which had occurred in an earlier, unrelated accident. His neck brace was in his briefcase during the flight.

Upon this general state of the evidence, a jury, instructed on both negligence and contributory negligence, returned a "comparative-negligence special verdict" in appellant's favor in the amount of $4,200, placing $14,000 as the value of appellant's injuries from the two accidents, and finding contributory negligence in the amount of 70 percent or $9,800, so that $4,200 in damages was awarded him against respondent TWA.

Bradfield's appeal is grounded on two main contentions. He claims first that it was reversible error to instruct on contributory negligence under the Warsaw Convention and California common carrier law, and secondly that there was no evidence of contributory negligence justifying the court's instruction and jury's finding in that regard.

I

██ We have concluded that instructions on "contributory" negligence pursuant to BAJI Nos. 2.60 and 3.50 (1975 rev.) are proper in

appropriate cases brought under the Warsaw Convention, but that in the present case there was insufficient evidence to justify the instructions.[1]

The Warsaw Convention of 1929, as amended by the Montreal Agreement, establishes by its article 17 a presumption of carrier's liability. The liability is virtually absolute, but a carrier may exculpate itself upon proof that the claimant *wilfully* caused the injury; and the carrier is permitted to prove contributory negligence on the injured person's part. (Sincoff, *Absolute Liability and Increased Damages in International Aviation Accidents* (1966) 52 A.B.A.J. 1122, 1124-1125; *Day* v. *Trans World Airlines, Inc.* (2d Cir. 1975) 528 F.2d 31, 36 [cert. den. 429 U.S. 890 (50 L.Ed.2d 172, 97 S.Ct. 246)].) Thus, article 21 of the convention provides: "If the carrier proves that the damage was caused by or contributed to by the negligence of the injured person the court *may,* in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability." (Italics added.) The phrase "in accordance with the provisions of its own law" has been interpreted by a leading authority as meaning its own *choice of law* rules rather than its own substantive law. (Kriendler, Aviation Accident Law (1974) § 11.01[2], p. 11-3; and cf. *Husserl* v. *Swiss Air Transport Company, Ltd.* (S.D.N.Y. 1975) 388 F.Supp. 1238.) The same author, in discussing the present and proposed article 21 of the convention in the context of the still unratified Guatemala Protocol of 1971, states that: "The second effect of the new Article 21 established by Article VII of the Guatemala Protocol is to dictate the rule of comparative negligence irrespective of the law of the forum on comparative or contributory negligence. Under the old Article 21 of the Warsaw Convention the court would apply its own rule of comparative or contributory negligence, but under the Guatemala Protocol comparative negligence is dictated." (*Id.,* at § 12B.03[3], p. 12B-35.)[2]

[1]BAJI No. 2.60 deals with the burden of proof and preponderance of evidence. BAJI No. 3.50 (1975 rev.) gives the definition of contributory negligence.

[2]Kriendler observes that: "On March 8, 1971, the Guatemala Protocol was completed and signed by twenty-one countries including the United States. The Guatemala Protocol is a new treaty. Its official title is 'Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 as Amended by the Protocol Done at The Hague on 28 September 1955.' The Guatemala Protocol is subject to ratification by the signatory countries as well as other countries that will undoubtedly sign in the near future. It is particularly subject to ratification by the United States, which must do so by action of the President upon vote of two-thirds of the Senate. Since the Protocol and its additional Protocols 3 and 4 represented Administration policy, it was always clear that the President would favor it. Therefore, the critical question is whether it can obtain approval of two-thirds of the United States Senate. The Protocol is so structured that it cannot be effective unless the

■ The use by the trial court of the phrase "contributory negligence" in instructing on the concept of comparative negligence is innocuous. *Li v. Yellow Cab Co.* (1977) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], abolished the legal *doctrine,* but not the phrase or the concept of "contributory negligence." A claimant's negligence contributing causally to his own injury may be considered now not as a bar to his recovery, but merely as a factor to be considered in measuring the amount thereof. (*Wittenbach* v. *Ryan* (1976) 63 Cal.App.3d 712, 718 [134 Cal.Rptr. 47].)

The corollary argument that "ordinary contributory[3] negligence is not and should not be a defense to a strict liability action . . . under the Warsaw Convention" is equally unfounded.

■ Appellant is, of course, correct in arguing that in the products liability field California courts have held that contributory negligence is not an available defense. (Cf., i.e., *Horn* v. *General Motors Corp.* (1976) 17 Cal.3d 359, 369-370 [131 Cal.Rptr. 78, 551 P.2d 398].) The comparative fault rule, however, does obtain (*Daly* v. *General Motors* (1978) 20 Cal.3d 725, 733 [144 Cal.Rptr. 380, 575 P.2d 1162]), and a petitioner's recovery may accordingly be reduced, but not barred, where his lack of reasonable care is shown to have contributed to his injury. ■ To the extent that any analogy between the presumptive liability of the Warsaw Convention and California products liability law may be justified, we believe current California law ordains that comparative negligence is available as a defense in actions based upon the Warsaw Convention. (Cf. *Williams* v. *Fidelity & Cas. Co. of New York* (E.D.La. 1977) 442 F.Supp. 455, 456-457.)

## II

■ Appellant next argues that the contributory negligence instructions were erroneous under California's "common carrier" law. Civil Code section 2100 provides: "A carrier of persons for reward must use the

United States ratifies it.

"If the Guatemala Protocol does become effective, or, to put it another way, if the United States ratifies it, it together with additional Montreal Protocols 3 and 4 will become the successor to both the Warsaw Convention and the Hague Protocol of 1955. It will therefore become the comprehensive new law of international airline liability.

"The Protocol constitutes a radical departure from present law. It provides for absolute, no-fault liability on the part of an airline, but it sharply limits that liability to $100,000 per passenger." (*Id.,* § 12B.01, p. 12B-2, fns. omitted.)

[3]"or comparative."

utmost care and diligence for their safe carriage, must provide everything necessary for the purpose, and must exercise to that end a reasonable degree of skill." That law, however, is manifestly inapplicable for the reason that the Warsaw Convention is a treaty of the United States which preempts our local law. (*United States* v. *Belmont* (1937) 301 U.S. 324 [81 L.Ed. 1134, 57 S.Ct. 758].)

As for the argument that 49 United States Code Annotated section 1506[4] leaves our courts free to impose local law, we view that section as merely a savings clause of the Federal Aviation Act which recognizes the availability of state remedies not inconsistent with the purpose of the act. (*Information Control Corp.* v. *United Airlines* (1977) 73 Cal.App.3d 630, 640 [140 Cal.Rptr. 877].)

### III

Appellant's final contention is that there was insufficient evidence to justify the court's instructing on contributory negligence.

We are in this respect bound by well-established appellate principles, stated succinctly in *Metzger* v. *Barnes* (1977) 74 Cal.App.3d 6, 9-10 [141 Cal.Rptr. 257], as follows: "In reviewing the evidence on appeal, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 . . .; *Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875, 881 . . .; *Stevens* v. *Parke, Davis & Co.,* 9 Cal.3d 51, 63-64 . . . .) It is the province of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses. The jury may accept part of the testimony of a witness and reject another part. (*Stevens* v. *Parke, Davis & Co., supra,* at p. 67.) [¶] These same considerations apply to the jury's apportionment of fault under comparative negligence rules. The appellate court may not substitute its judgment for that of the jury or set aside the jury's finding if there is any evidence which under any reasonable view supports the jury's

---

[4]Section 1506 provides: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

apportionment. (*Rangel v. Graybar Electric Co.,* 70 Cal.App.3d 943, 945-946 . . .; *Martin* v. *Bussert* (1971) 292 Minn. 29 [193 N.W.2d 134, 137-139]; *Neider* v. *Spoehr* (1969) 41 Wis.2d 610 [165 N.W.2d 171, 177]; *Davis* v. *Allstate Ins. Co.* (1972) 55 Wis.2d 56 [197 N.W.2d 734, 736].)"

■ Confronted by this rigorous restriction, we nevertheless concede great difficulty in isolating from the record substantial evidence of appellant's negligence. It consisted, presumably, in appellant's having visited the first class lounge on his own, in spite of his recent neck injury, and in stockings rather than the crocheted footware furnished by TWA.[5]

None of these alleged derelictions, we observe, is the subject of any regulation promulgated to passengers in tourist class. Appellant's mere presence in the first class lounge without a medical collar, at a moment of aircraft turbulence of which he was never forewarned, cannot in our view justify a finding of negligence in the absence of medical evidence of the advisability of wearing the collar, or a showing that he was warned of a danger in wearing stockings while descending the first class stairs, or in being in the lounge at all.

Indeed, our conclusion is that the record discloses no cumulatively substantial evidence that appellant's conduct contributed to his injury, and, accordingly, we are of the opinion that it was error to have instructed on contributory negligence, and that the judgment below should be modified to provide no offset for such comparative negligence.

As so modified the judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

---

[5]From the record we learn that the airlines have apparently an unpublished rule that first class passengers are furnished "booties" made of crotcheted wool as a precaution against slippage.