OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION | : |
| | : No. 90-925 |
| of | : |
| | : February 26, 1991 |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| ANTHONY S. DaVIGO | : |
| Deputy Attorney General | : |
| | : |

GLENN MONDO ("relator") has requested this office to grant leave to sue RICHARDS L. NORTON ("defendant") in quo warranto pursuant to section 803 of the California Code of Civil Procedure. Relator contends that defendant is unlawfully occupying a public office, to wit: member of the city council, City of Santa Ana.

CONCLUSION

It is concluded that leave to sue should be DENIED.

CRITERIA FOR QUO WARRANTO

In deciding whether to grant leave to sue in the name of the people of the State of California, we consider the following fundamental precepts which provide the basis for this analysis: leave will be granted where there is a substantial question of law or fact which requires judicial resolution, *and* where the action in quo warranto would serve the overall public interest of the people of this state. (72 Ops.Cal.Atty.Gen. 15, 19 (1989).)

MATERIAL FACTS

In April of 1989, defendant was elected, qualified, and assumed office as a member of the city council of the City of Santa Ana. On November 6, 1990, defendant was reelected, and on November 26, qualified and assumed said office for a full term.

Relator alleges that defendant used his status as a city council member to obtain a discount for transportation by a public carrier, in that the airline tickets which he had previously purchased for himself and his spouse were, upon identifying himself as a city council member, and based upon such official capacity, upgraded from coach to first class without additional payment by defendant.

Defendant alleges that he and his wife were, on July 19, 1990, leaving on their honeymoon to the Virgin Islands. When the ticket agent discovered the purpose of the trip, she

1.                                                                                                    90-925

offered in accordance with standard company policy, and he accepted, the upgrade from coach to first class tickets without additional cost. During his conversation with the ticket agent, she inquired about his badge, and he identified himself as a city council member; however, this fact had no bearing upon the upgrade from coach to first class tickets.

## ISSUES OF FACT OR LAW

1.     Did defendant accept the free upgrade from coach to first class tickets as a member of the city council or by virtue of the public carrier's policy regarding persons on their honeymoon?

2.     Does article XII, section 7, of the California Constitution apply without regard to a public officer's membership in some other relevant class?

## ANALYSIS

Article XII, section 7, of the California Constitution provides as follows:

"A transportation company may not grant free passes or discounts to anyone holding an office in this state; and the acceptance of a pass or discount by a public officer . . . shall work a forfeiture of that office. . . ."

The following factual premises are not controverted:

1.     Defendant is a city council member.[1]

2.     Defendant purchased tickets from a common air carrier[2] for his honeymoon voyage.

3.     The common carrier regularly upgrades to first class without additional charge persons who are on their honeymoon voyage.

4.     The common carrier offered and defendant accepted an upgrade to first class without charge.

There is no evidence or allegation that the common carrier has regularly or in any other instance offered a free upgrade to any passenger because of his status as a public officer. Relator's allegation that the offer to and acceptance by defendant of an upgrade was based on his status as a city council member, is fundamentally uncorroborated by direct evidence. While we are acutely aware of the constitutional prohibition and the public policy which it serves, we simply do not find, under the recitations presented, the existence of a *substantial* issue of fact concerning the basis for the upgrade.

A legal issue does arise, however as to whether the constitutional prohibition applies without regard to a public officer's membership in a class of persons *other than public officers* (such as all those traveling on their honeymoon) who are granted free or discounted passes by a public

---

[1] A member of a city council holds a public office in this state. (73 Ops.Cal.Atty.Gen. 354, 356 (1990).)

[2] An airline is a "transportation company" within the meaning of California Constitution, article XII, section 7. (67 Ops.Cal.Atty.Gen. 81, 82 (1984).)

carrier. In 67 Ops.Cal.Atty.Gen. 81 (1984), we considered whether a transportation pass may be provided to a public officer as a member of a larger group unrelated to the functions of his office. Specifically, it was concluded that the Constitution does not prohibit a member of the California Legislature who is a spouse of a flight attendant from accepting a free or discounted air travel pass when such passes are offered on the same conditions to spouses of all flight attendants. We stated at pages 83-84:

> "It is unclear from a literary examination of article XII, section 7, whether it applies to a public officer only in such specific capacity, or extends to such officer without regard to his membership in some external class or universe. . . . In arriving at the meaning of constitutional language, consideration must be given to the words employed, giving to every word, clause and sentence their ordinary significance. If doubt or ambiguity remains, then well recognized extrinsic aids may be introduced. Among these is a consideration of the objective sought to be accomplished. (*State Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 462; *Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 495.)

> "Article XII, section 7 (formerly § 19), was adopted to control the perceived corruptive influences of the railroads on the legislative process. (See Debates and Proceedings of the Constitutional Convention, p. 379; John K. McNulty, `Background Study - California Constitution Article XII, Corporations and Public Utilities' (1966) p. 100.) Would the acceptance of a free or discounted transportation pass by a member of the Legislature as a spouse of a flight attendant tend to corrupt the legislative process? It is apparent that the perceived corruptive influence consisted of the granting of special benefits in exchange for legislative favor. Thus, explicitly or implicitly, legislation favorable to the railroads was the *quid pro quo*. From this perspective, the pertinent question is not whether the pass be gratuitous vis-a-vis the company employee but whether it be granted subject to some express or implied condition of legislative or other official approbation.

> "If, as we assume in the absence of contrary advisement or indication, the *sole* condition for the receipt of the propounded benefit is the spousal relationship, then the element of corruptive influence appears to be lacking, and the application of the constitutional prohibition would fail to serve its intended objective.

> "Accordingly, it is concluded that the acceptance by a member of the California Legislature who is the spouse of a flight attendant of a free or discounted air travel pass is not prohibited by article XII, section 7, of the California Constitution when such passes are offered on the same conditions to spouses of all flight attendants. . . ."

Similarly, it is concluded that the Constitution does not prohibit a person on his honeymoon, whether or not such person holds a public office, from accepting a free or discounted air travel pass when such passes are offered on the same conditions to all such persons.[3]

---

[3]We are neither asked nor do we now consider the propriety of such a discount (see Pub. Util. Code, §§ 453, 523; Civ. Code, § 2170), nor whether such provisions are superseded by federal law regulating interstate and foreign travel by air carriers (49 U.S.C. §§ 1373, subd. (b)(1), and 1305, subd. (a)(1); and cf. 67 Ops.Cal.Atty.Gen., *supra*, 82, n. 3). We did not intend to suggest in the latter opinion (*Id.* at n. 3) that the *forfeiture of public office by a person accepting such a discount*, pursuant to the California Constitution, is superseded by such federal statutes. (49 U.S.C. § 1506; *Bradfield* v. *Trans World Airlines, Inc.* (1979) 88 Cal.App.3d 681, 687; *Information Control Corp.* v. *United Airlines* (1977) 73 Cal.App.3d 630, 640; and see unpub. opns. I.L. 64-111 (1964), I.L. 71-159 (1971), and I.L. 75-294 (1975).)

PUBLIC INTEREST

It is not the province of the Attorney General to determine which party should or is likely to prevail in a quo warranto proceeding. (72 Ops.Cal.Atty.Gen. 15, 19 (1989).) However, the mere existence of a justiciable issue does not establish that the public interest requires a judicial resolution of the dispute or that leave automatically should be granted for the proposed relator to sue in quo warranto. (67 Ops.Cal.Atty.Gen. 151, 154 (1989).) As stated in *City of Campbell* v. *Mosk* (1961) 197 Cal.App.2d 640, 650:

"The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails."

We believe it would not be in the public interest to burden the city or the courts with this dispute, and that a contrary disposition would discourage participation by citizens in public office. (72 Ops.Cal.Atty.Gen., *supra*, at 24.) Further, we are mindful of the general principle that ambiguities concerning the right to hold public office should be resolved in favor of eligibility. The court stated in *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418:

"We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in *People* v. *Washington*, 36 Cal. 658, 662, our Supreme Court declared that `[t[he elective franchise and the right to hold public offices constitute the principle political rights of citizens of the several States.' In *Carter* v. *Com. on Qualifications etc.*, 14 Cal.2d 179, 182, the court pointed out: `[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship . . . *The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office. . . .*' (Italics added.) More recently, the high court, citing *Carter*, has termed the right to hold public office a `fundamental right.' (*Zeilenga* v. *Nelson*, 4 Cal.3d 716, 720; *Fort* v. *Civil Service Commission*, 61 Cal.2d 331, 335.) Thus, any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility. . . ."

For the foregoing reasons, leave to sue is denied.[4]

\* \* \* \* \*

---

[4]We note but do not consider, in view of the result reached here, the effect of defendant's reelection to a succeeding full term.