Opinion
 

 ASHBY, J.
 

 —Plaintiff Metzger brought this action against defendants Barnes and Wescom for personal injuries received in a waterskiing accident. The matter was tried by a jury on the basis of comparative negligence.
 
 (Li
 
 v.
 
 Yellow Cab Co.,
 
 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) By special verdict the jury found there was negligence on the part of Barnes, Wescom, and plaintiff which contributed to plaintiff’s injuries; that of the combined negligence of plaintiff and defendants the portion attributable to plaintiff was 90 percent and the portion attributable to defendants was 10 percent; and that plaintiff’s damages, without reduction due to plaintiff’s negligence, totaled $20,114. The trial court therefore entered judgment for plaintiff for $2,011.40. Plaintiff appeals.
 

 Plaintiff’s main contention is that the finding by the juiy that 90 percent of the combined negligence is attributable to plaintiff and 10 percent attributable to defendants is not supported by the evidence. In reviewing the evidence on appeal, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.
 
 (Crawford
 
 v.
 
 Southern Pacific Co.,
 
 3 Cal.2d 427, 429 [45 P.2d 183];
 
 Foreman & Clark Corp.
 
 v.
 
 Fallon,
 
 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362];
 
 Stevens
 
 v.
 
 Parke, Davis & Co., 9
 
 Cal.3d 51, 63-64 [107 Cal.Rptr. 45, 507 P.2d 653].) It is the province of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses. The jury may accept part of the testimony of a witness and reject another part.
 
 (Stevens
 
 v.
 
 Parke, Davis & Co., supra,
 
 at p. 67.)
 

 These same considerations apply to the juiy’s apportionment of fault under comparative negligence rules. The appellate court may not substitute its judgment for that of the juiy or set aside the jury’s finding if there is any evidence which under any reasonable view supports the
 
 *10
 
 jury’s apportionment.
 
 (Rangel
 
 v.
 
 Graybar Electric Co.,
 
 70 Cal.App.3d 943, 945-946 [139 Cal.Rptr. 191];
 
 Martin
 
 v.
 
 Bussert
 
 (1971) 292 Minn. 29 [193 N.W.2d 134, 137-139];
 
 Neider
 
 v.
 
 Spoehr
 
 (1969) 41 Wis.2d 610 [165 N.W.2d 171, 177];
 
 Davis
 
 v.
 
 Allstate Ins. Co.
 
 (1972) 55 Wis.2d 56 [197 N.W.2d 734, 736].) We therefore state the evidence in the light most favorable to the judgment.
 

 On July 4, 1973, on Lake Nacimiento, San Luis Obispo County, plaintiff and three of his friends, Leslie Withers, Steve Torres and Karen Torres, were using plaintiff’s boat for waterskiing. Karen had been skiing for about 15 minutes when she fell, and plaintiff circled back with the boat to pick her up. She indicated that she wanted to get into the boat rather than start up again. The ski rope, which was over 90 feet long, extended away from the boat in a curve caused by the boat’s circling to pick Karen up. After Karen got in the boat she started to pull the rope in but plaintiff told her not to, that he was going to ski. At this point the motor of plaintiff’s boat was not running, and the boat was drifting, 75 to 100 feet from shore. Plaintiff put on the life vest that Karen had been wearing, threw his ski in the water, and jumped in. Plaintiff thereafter spent a period of time adjusting his ski while in the water, because he had neglected to adjust the boot beforehand. Plaintiff was about 15 feet in back of the boat. The ski rope remained curved. Plaintiff grabbed the rope handles so he would have them when his boat got ready to start up.
 

 Meanwhile, defendant Wescom was on the nearby shore preparing to waterski. He was to be pulled by defendant Barnes, driving Wescom’s boat, from a step-start from the shore. After one false start, Barnes piloted the boat straight out from the shore, towing Wescom, and passed within about 75 feet of plaintiff’s boat. He did not see plaintiff or plaintiff’s rope. Neither did Wescom. The Wescom boat passed over plaintiff’s ski rope, at 20 to 30 miles per hour, severing it. Wescom also passed over the rope on his skis. Plaintiff was holding on to the rope’s handles, felt a tug underwater, and saw the rope go taut up in the air. Plaintiff’s thumb was severed. No details were provided as to how plaintiff held the rope so as to have his thumb severed by the accident.
 

 There was much conflicting evidence relevant to whether defendants maintained a proper lookout or had reason to know of the presence of plaintiff and the rope in the water. A party attacking the sufficiency of evidence to support a verdict must cite all the material evidence which supports the verdict and bears the burden to demonstrate there is
 
 no
 
 substantial evidence to support the findings.
 
 (Foreman &
 
 
 *11
 

 Clark Corp.
 
 v.
 
 Fallon, supra,
 
 3 Cal.3d 875, 881;
 
 Kannerv. Globe Bottling Co.,
 
 273 Cal.App.2d 559, 564 [78 Cal.Rptr. 25].) The jury was entitled to accept the evidence favoring defendants and reject the evidence favoring plaintiff. In support of the jury’s apportionment we must do likewise, Barnes testified that when he first walked along the shore and entered Wescom’s boat, plaintiff’s boat was already drifting in the water and Barnes did not know whether it had been pulling a skier or not. The evidence is uncontradicted that it is good boating practice for the person acting as spotter on the skier’s boat to raise an arm or a flag when a skier is in the water. Plaintiff, Leslie Withers, and the deposition of Karen Torres indicated that Karen held a flag up all the time plaintiff was in the water. Wescom, on the other hand, was sure that there was no flag or arm extended from plaintiff’s boat. There was also evidence.that Karen was tired from skiing, and was sitting down with her elbow on the edge of the boat. The jury was entitled to infer that no flag was raised. Defendants both testified that they did not see plaintiff in the water. They also testified that they did not see the rope. There was ample evidence justifying an inference that this was not due to a failure to keep a proper lookout. Plaintiff was near his own boat and may not have been visible. The water was choppy and this obscured visibility of the blue and white rope. There were numerous other boats on the water and Barnes testified that he could not safely give all his attention to plaintiff’s boat. Barnes further testified, “I looked as any person would look,” and the jury was entitled to believe him. There was likewise conflicting evidence as to the safety of the path taken by defendants. The jury was entitled to accept the favorable evidence. In summary, there was ample evidence which would justify the jury’s conclusion that defendants’ negligence was very slight.
 

 Conversely, the jury could reasonably conclude that plaintiff was largely responsible for his injury. Some of the evidence suggested that plaintiff’s ski rope remained in the water for 10 to 12 minutes between the time Karen fell and the time of the accident. It was plaintiff himself who directed that the rope not be pulled in, and plaintiff who remained in the water himself adjusting his ski for what some witnesses estimated as four to five minutes. A park ranger testified that it would not be good boating practice to leave the rope out for that period of time precisely because of the danger that another boat or skier might run over it. Ropes with more visible colors were available. Plaintiff has not sustained his burden of demonstrating that there is no substantial evidence for the juiy’s apportionment of negligence.
 

 
 *12
 
 Plaintiff’s next contention is that the trial court erred in its instruction to the jury on 'the effect of former Harbors and Navigation Code section 267, subdivision (a). At the time of trial Harbors and Navigation Code section 267 provided in pertinent part:
 

 “Every owner, operator, or person in command of any powerboat, is guilty of a misdemeanor who operates it or permits it to be operated at a speed in excess of five nautical miles per hour in any portion of the following areas not otherwise regulated by local rules and regulations:
 

 “(a) Within 100 feet of any person who is engaged in the act of bathing.
 
 A person engaged in the sport of water skiing shall not be considered as engaged in the act of bathing for the purposes of this section.
 
 ” (Stats. 1970, ch. 385, § 1, p. 799; italics added.)
 
 [1]
 

 The trial court read the statute to the jury and instructed the jury that, “If you find that a party to this action violated [this section] and that such violation was a proximate cause of injury to another or to himself, you will find that such violation was negligence.” The court refused plaintiff’s request that the jury be “instructed that as a matter of law Mr. Metzger was not engaged in the act of water skiing at the time he alleges to have incurred the loss of his thumb.”
 

 Plaintiff contends that as a matter of law he was not engaged in the sport of waterskiing at the time of the accident. He seeks to limit the exception in the statute to waterskiers who are actually under tow. This contention is without merit. As stated in
 
 Press
 
 v.
 
 Lyford,
 
 36 Cal.App.3d 986, 997 [111 Cal.Rptr. 817], “[W]aterskiing necessarily involves falling or jumping into the water . . . .” Plaintiff was in the water on his ski and had even grabbed hold of the ski rope in preparation for the boat to tow him. He was in an area of the lake where waterskiing was permitted. Some areas of the same cove were marked off for bathing. At that time of the year the lake was used primarily for waterskiing. The fact that plaintiff had not yet started to move on the water is not determinative. In this respect he was no different than a skier who has fallen into the water and is waiting for his boat to return so that he can grab the rope handles and start up again. To give the statute the narrow construction urged by plaintiff, could well make waterskiing impossible on popular and crowded waterways. All skiing would have to stop whenever a nearby
 
 *13
 
 skier fell in the water because the boats would have to slow down to five nautical miles per hour. The legislation was intended to permit waterskiing despite its dangerousness.' The statutory exception refers to the “sport” of waterskiing, not merely the “act” of waterskiing. Assuming, as contended by plaintiff, the question whether tire statute was violated is a question of law on the facts of this case, the statute was not violated, and any error in leaving that question to the jury was favorable to plaintiff.
 

 (5) Plaintiff’s third contention is that in apportioning 90 percent of the negligence to plaintiff the jury must have concluded (1) that the persons on plaintiff’s boat failed to raise a hand or signal that a skier was in the water; (2) that this constituted negligence proximately contributing to plaintiff’s injury; and (3) that this negligence was to be “imputed” to plaintiff. The record does not support this contention.
 

 In this connection plaintiff contends the trial court erred in rejecting his request that the jury be instructed along the lines of BAJI No. 3.70 that “[t]he plaintiff is not responsible for any act or omission of the driver of the car in which he was riding. Therefore, unless you find some negligent conduct on his own part which contributed as a [legal] [proximate] cause of his injury, the plaintiff may not be found contributorily negligent.”
 

 Although the trial court rejected plaintiff’s requested instruction, it did not affirmatively instruct the juiy that negligence by persons in plaintiff’s boat was attributable to plaintiff. The court instructed the jury in the language of BAJI Nos. 14.90, 14.9.1, and 14.93 that the jury was to evaluate the “combined negligence of the Plaintiff and of the Defendants whose negligence proximately contributed to Plaintiffs injury,” such combined negligence being 100 percent.
 

 The court did not use the optional phrases in those BAJI instructions referring to the combined negligence of the plaintiff and of the defendants
 
 and of all other persons
 
 whose negligence proximately contributed to the injury. The use note to BAJI No. 14.90 provides: “The Committee is of the opinion that in reducing the total amount of damages under the doctrine of comparative negligence as established in Li v. Yellow Cab Co., 3 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226, the contributory negligence of the plaintiff must be proportioned to the combined negligence of plaintiff and of all the tort-feasors, whether or not joined as parties, also defendants who have settled out, whose
 
 *14
 
 negligence proximately caused or contributed to plaintiff’s injury. [¶]
 
 Strike the bracketed reference to other persons if there is no claim that non-joined persons or settling defendants proximately contributed to the
 
 injury.” (Use note, BAJI No. 14.90 (5th rev. ed. 1975 pocket pt.) p. 152.; italics added.)
 

 Nowhere in the court’s instructions did it tell the jury to determine whether the persons in plaintiff’s boat .were negligent, to determine whether such negligence proximately contributed to plaintiff’s injury, and to impute such negligence to plaintiff in evaluating the total combined negligence of plaintiff and the defendants. The record does not indicate that the defense requested any such instructions or argued such theory to the jury. Plaintiff’s assumption that the jury did so is not supported by the record. Although both defendants testified that they did not see any flag or arm raised from plaintiff’s boat, this was not necessarily an attempt to prove that negligence by nondefendant tortfeasors proximately contributed to plaintiff’s injury. It was consistent with a more simple defense, namely, that the defendants had no specific notice that plaintiff was in the water and thus were not negligent themselves in failing to see him. Another reason it was not necessary for the defense to rely upon a theory of “imputed” negligence is the evidence that plaintiff was personally and directly in command of his boat. It was plaintiff himself who directed Karen not to bring the rope into the boat. On cross-examination plaintiff admitted that he could “tell the people in the boat what to do . . . .” With respect to Karen’s holding the flag, plaintiff testified, “I didn’t look at her every second, but if she would have lowered the flag, I would have told her to raise it back up____”
 

 Thus the record does not show that the defense contended, that the court instructed, or that the jury found, that negligence by the persons in plaintiff’s party was to be “imputed” to him. Plaintiff merely assumes so because he considers the verdict as to defendants’ negligence too low. But as we have pointed out, the record supports the jury’s findings without regard to any theory of “imputed” negligence.
 

 The judgment is affirmed.
 

 Kaus, P. J., and Hastings, J., concurred.
 

 [1]
 

 This section has since been amended in other respects and renumbered as Harbors and Navigation Code section 655.2. (Stats. 1976, ch. 744, § 1, pp. 1768-1769.)