[Civ. No. 22543. Third Dist. Apr. 8, 1985.]

BRUCE E. ANDERSON, a Minor, etc., Plaintiff and Respondent, v.
THOMAS CARLTON LATIMER, Defendant and Respondent;
DORIS LEE ANDERSON, Defendant and Appellant.

THOMAS CARLTON LATIMER, Petitioner, v.
THE SUPERIOR COURT OF SHASTA COUNTY, Respondent;
LEROY ANDERSON et al., Real Parties in Interest.

668

**COUNSEL**

Clyde Small for Defendant and Appellant and Real Party in Interest.

Tocher, Gazzigli & Boeckman and Joseph A. Gazzigli for Plaintiff and Respondent and Real Party in Interest.

Carr, Kennedy, Peterson & Frost, R. Ross Peterson and David L. Edwards for Defendant and Respondent and Petitioner.

No appearance for Respondent Court.

**OPINION**

**KEELEY, J.*—Judgment was entered upon a jury verdict in favor of plaintiff Bruce Anderson, a minor, and against defendants Doris Anderson and

---

*Assigned by the Chairperson of the Judicial Council.

Thomas Latimer. Plaintiff's claim arose out of a two-car automobile collision. He was a passenger in a vehicle being operated by his mother, defendant Doris Anderson. He was injured when the Anderson vehicle was struck broadside by one being operated by defendant Thomas Carlton Latimer. The jury verdict found defendants equally at fault.

Defendant Anderson appeals. In a consolidated matter, defendant Latimer moves for a writ of mandate directing the trial court to approve a petition for compromise of claim of minor, and to find the compromise settlement to be one in "good faith" within the meaning of Code of Civil Procedure section 877.6. This writ relates to an alleged settlement between the minor plaintiff and defendant Latimer entered postjudgment *and* post notice of appeal while all issues were pending in this court.

We shall affirm the judgment and deny the petition for writ of mandate.

I

### DISCUSSION

On appeal, defendant Anderson argues: (1) the insufficiency of the evidence to support the judgment as to her; (2) prejudicial error in instructing the jury on Vehicle Code section 22107; and (3) prejudicial error in refusing to give her requested instructions on imminent peril. (BAJI Nos. 4.40, 4.41.)

### SUFFICIENCY OF THE EVIDENCE

■ "In reviewing the evidence on appeal, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citations.] It is the province of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses." (*Metzger* v. *Barnes* (1977) 74 Cal.App.3d 6, 9 [141 Cal.Rptr. 257].) With the foregoing in mind we now state the facts most favorable to the respondents.

Defendant Latimer was traveling northbound on Churn Creek Road, a two lane arterial highway with a speed limit of 50 miles per hour. After passing a northbound vehicle being driven by a Ms. Henry, he collided with the southbound vehicle of defendant Anderson, while she was executing a left hand turn off Churn Creek Road into a private driveway.

Mr. Wilkerson, a passenger in the Latimer vehicle, stated he first saw defendant Anderson when she "turned in front of us." He did not know if she had signaled prior to making the turn. He stated she was two or three car lengths in front of the Latimer vehicle when she crossed the center line in front of him. Defendant Latimer's testimony placed the Anderson vehicle directly across his lane of travel at impact. He testified, in effect, that she violated his right of way. He stated he did not see any left hand turn signal by Anderson prior to her turning movement.

If the jury chose to believe the testimony of Latimer and Wilkerson, it could have properly concluded that defendant Anderson made a left hand turn directly into the path of Latimer's vehicle when it was only two or three car lengths away, thereby failing to yield the right of way to an approaching vehicle which constituted an immediate hazard. The jury had the right to accept this evidence. It, in fact, represents sufficient evidence upon which to predicate the conclusion that defendant Anderson was negligent.

Nevertheless, defendant Anderson argues that both eyewitness testimony and expert testimony, based upon certain skid marks allegedly from this accident, establish that defendant Latimer was speeding and the sole negligent cause of the collision.

Ms. Henry, an eyewitness, testified to her speed just before the collision at an estimated 45-50 miles per hour when Latimer "whizzed by" as if she were standing still. Both witness Wilkerson and defendant Latimer contradicted this testimony. Wilkerson testified the Henry vehicle was moving slowly, at approximately 25-30 miles per hour, and estimated Latimer's speed as between 45 and 50 miles per hour while passing. Latimer estimated Ms. Henry's speed at approximately 25 miles per hour and stated he did not have to accelerate from his speed of 35-40 miles per hour in order to pass. If the jury chose to believe the testimony of Wilkerson and Latimer, it could properly reject the "eyewitness" testimony of Ms. Henry. (*Metzger v. Barnes, supra,* 74 Cal.App.3d 6, 9.) We may not substitute our judgment for that of the jury.

Plaintiff Anderson's expert estimated Latimer's speed at between 73.1 and 73.7 miles per hour. Defendant Anderson's expert estimated Latimer's speed at between 60-70 miles per hour. Mr. Melnicoe, Latimer's expert, contradicted their testimony.

Mr. Melnicoe testified he found no physical evidence of excess speed. He stated the skid marks used by the other experts to estimate Latimer's speed were not from this accident. He stated the skid marks used by the other experts were not locked wheel skids, but were acceleration skid marks put

down by some vehicle other than Latimer's. He stated that since both defendants Latimer and Anderson placed the Latimer vehicle on Churn Creek Road south of Arizona Street, these arced skid marks which started on Arizona Street could not have been from the Latimer vehicle. More importantly, he testified that a locked wheel skid of 210 feet would literally burn rubber off the tire. When he inspected Latimer's tires he specifically looked for feathering around the edge of the tread, balled-up rubber, and a flattened area which would indicate a skid of a great distance. All four tires were well treaded with no unusual signs of wear. He found no evidence of rubber having been burned off the Latimer tires. He further testified that the disputed 210-foot skid mark which arced out of Arizona Street was 5 inches in width, while Latimer's tread was 6¾ inches from edge to edge. For at least four distinct reasons, Mr. Melnicoe concluded the tire marks used by the other experts to determine the speed of the Latimer vehicle simply did not come from the Latimer vehicle. If the jury chose to believe this testimony of Mr. Melnicoe it could properly reject all other expert testimony relative to the speed of the Latimer vehicle. (*Metzger* v. *Barnes, supra,* 74 Cal.App.3d 6, 9.) We may not substitute our judgment for that of the jury.

In summary, the jury possessed the right to accept the testimony of Wilkerson, Latimer and Mr. Melnicoe, and reject the testimony offered by plaintiff Anderson and defendant Anderson. If it did so, substantial evidence supports the jury's finding of negligence on the part of defendant Anderson. Consequently, defendant Anderson's argument relative to the sufficiency of the evidence must fail.[1]

### VEHICLE CODE INSTRUCTIONS

Defendant Anderson next contends the trial court's instruction on Vehicle Code section 22107,[2] read in conjunction with BAJI No. 3.45,[3] created a presumption of negligence constituting reversible error.

---

[1]Defendant Anderson contends the facts in the case precluded the jury from apportioning liability equally among the defendants. She argues that either one or the other defendant should have been found 100 percent liable and the other exonerated. She makes this contention based on the hypothesis that the two defendants gave distinctly different versions of the incident. While interesting in the abstract, her hypothesis is not the determinative issue. By accepting portions of testimony from each of various witnesses, a jury could have reasonably concluded that defendant Anderson made an illegal left hand turn and defendant Latimer exceeded the speed limit. A jury could then conclude that this conduct of each defendant was negligent.

[2]Vehicle Code section 22107 provides: "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement."

[3]All BAJI instructions referred to are from the sixth edition (1977).

The record reveals the trial court did not instruct the jury on Vehicle Code section 22107. Consequently, defendant Anderson's initial premise, that the trial court instructed the jury on Vehicle Code section 22107, is factually erroneous. One may not predicate error upon the giving of a jury instruction which was in fact not given.

■ The trial court did give BAJI No. 5.20.[4] This instruction, if applicable, should be preceded by a reading of Vehicle Code section 22107. Indeed, it should only be given if the jury is instructed on Vehicle Code section 22107. BAJI 5.20 should not have been given in this case. Nevertheless, the effect of reading BAJI No. 5.20, without the instruction which should have preceded it, was to minimize the emphasis on a disputed issue of whether or not defendant Anderson gave a turn signal prior to beginning her turn into her driveway. BAJI No. 5.20 shifted the focus to whether defendant Anderson used ". . . such precaution as would satisfy a reasonably prudent person, acting under similar circumstances, that the turn or movement could be made safely." The effect of this instruction was simply to restate defendant's obligation to use ordinary care in different language. (Cf. BAJI No. 3.10.) The trial court in no fashion tied BAJI No. 5.20 into BAJI No. 3.45.[5] BAJI No. 3.45, as given, referred only to Vehicle Code section 21801. It neither referred to any other Vehicle Code section nor any other jury instruction. A presumption of negligence was not created by the trial court reading BAJI No. 5.20 in a vacuum. Thus, the error was harmless, as it is not likely that the jury was misled by the reading of BAJI 5.20. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal § 306, p. 4288; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial § 242, p. 3056.)

Defendant Anderson further contends the trial court's instruction on Vehicle Code section 21801[6] read in conjunction with BAJI No. 3.45 com-

---

[4]BAJI No. 5.20: "The words just quoted from the Vehicle Code, namely, that 'no person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety,' do not mean that the driver of a motor vehicle, before making such a turn or movement, must know that there is absolutely no possibility of accident. [¶] They mean that before starting to move right or left or turn a vehicle on a public highway, and while making the turn or such movement, the driver of the vehicle must use such precaution as would satisfy a reasonably prudent person, acting under similar circumstances, that the turn or movement could be made safely."

[5]BAJI No. 3.45 as read to the jury provided: "If you find that a party to this action violated Vehicle Code 21801, the statute just read to you, and that such violation was a proximate cause of the injury to another, you will find that such violation was negligence, unless such party proves by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law."

[6]Vehicle Code section 21801 provides: "(a) The driver of a vehicle intending to turn to the left at an intersection or into public or private property, or an alley, shall yield the right-of-way to all vehicles which have approached or are approaching from the opposite direction and which are so close as to constitute a hazard at any time during the turning movement

pounded the alleged error. A review of the record reveals defendant Anderson's counsel requested both the BAJI No. 3.45 and Vehicle Code section 21801 instructions as actually given. She cannot now complain that these instructions were given. (*Smith* v. *Americania Motor Lodge* (1974) 39 Cal.App.3d 1, 7 [113 Cal.Rptr. 771, 88 A.L.R.3d 1188]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal § 267, p. 4258.) Moreover, as indicated *ante,* BAJI No. 5.20 was not tied into BAJI No. 3.45. No compounding effect was created. It is not likely the giving of the instructions as read misled the jury. Any errors complained of by defendant Anderson were either harmless or invited.

### IMMINENT PERIL

Defendant Anderson's final contention is that the trial court erroneously refused to instruct the jury on the doctrine of imminent peril (BAJI Nos. 4.40,[7] 4.41). She advances this contention without significant citation of authority. Her contention lacks merit.

■ It is well settled that a litigant is entitled to instructions on every theory advanced by her which is supported in the pleadings and evidence. (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 543 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158]; *Phillips* v. *G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33].) Consequently, in deciding whether the trial court erred in refusing her requested instruction, the evidence should be viewed in a light most favorable to her. (*Ng* v. *Hudson* (1977) 75 Cal.App.3d 250, 254 [142 Cal.Rptr. 69].) If the evidence so viewed supports the instruction, then not to give it is error.

■ So viewing the instant case, defendant Anderson testified she had already started her left hand turn into her driveway when she first observed defendant Latimer's vehicle several car lengths south of Arizona Street, approximately 300 feet from the point of impact. Latimer's car, which was

---

and shall continue to yield the right-of-way to such approaching vehicles until such time as the left turn can be made with reasonable safety. [¶] (b) A driver having so yielded and having given a signal when and as required by this code may turn left and the drivers of all other vehicles approaching from the opposite direction shall yield the right-of-way.''

[7]BAJI No. 4.40 provides: "A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence of, or the appearance of, imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him, although in the light of after-events, it should appear that a different course would have been better and safer.''

"dipping up and down" appeared to be stopping. It was not viewed as placing her in peril at that time. She then looked in her rear view mirror, checked her driveway and continued her turn. During her turning movement, she viewed the Latimer vehicle as being a peril to her and hit her accelerator in an attempt to increase speed to reach her driveway. Given the position of her car at the time she viewed her "peril" she took the only course of action available. She could neither brake nor back up to avoid impact. She did not testify to alternative courses of action being available to her. She did not testify to choosing one of two available courses of action.

An instruction on imminent peril should not be given unless at least two courses of action are available to the party after the danger is perceived. (*Casey* v. *Russell* (1982) 138 Cal.App.3d 379, 386 [188 Cal.Rptr. 18]; see also the use note to BAJI No. 4.40.[8]) Since the evidence would not support a finding that two courses of action were available to defendant Anderson after she perceived any peril, the trial court properly rejected any instruction on the doctrine of imminent peril.[9]

The judgment is affirmed.

## II

### The Writ of Mandate

In a consolidated matter defendant Latimer moves for a writ of mandate directing the trial court to approve a petition for compromise of claim of minor and to find the compromise settlement to be one in "good faith" within the meaning of Code of Civil Procedure section 877.6.

Following entry of judgment in favor of plaintiff, defendant Anderson filed an appeal on January 13, 1983. Defendant Latimer filed a cross-appeal[10] on January 28, 1983.

---

[8]The use note to BAJI No. 4.40 states: "This instruction should be given *only* if the evidence is sufficient to support a finding . . . [¶] 3. That at least two courses of action were available to the party after the perilous situation was perceived. [Citations.] . . . . [¶] 4. That the course of action taken after confrontation by the peril [citation] was a course of action which would have been taken by a reasonably prudent person under similar circumstances [citations]." (Italics added.)

[9]The record reflects that defendant Anderson asked for instructions on the doctrine of imminent peril orally, but not in writing. They were tendered orally after the first witness was sworn. (See Code Civ. Proc., § 607a.) The record does not reflect why the trial judge refused these instructions. Technically, these instructions could properly have been refused as tardy and not in proper form. (See Code Civ. Proc., § 607a.)

[10]Latimer's cross-appeal was dismissed upon his request on May 23, 1984.

██ On April 4, 1983, while all issues raised in this litigation were pending in this court, defendant Latimer and Leroy Anderson, plaintiff Bruce Anderson's guardian ad litem, filed in the Shasta County Superior Court a petition for approval of compromise of minor's claim. A minor's compromise requires the approval "of the court in which such action or proceeding is pending." (Code Civ. Proc., § 372.[11]) At the time the petition was filed (Apr. 4, 1983), the action, by virtue of appeals filed by both defendants, was pending in this court.

Thus, this court was the only court possessing jurisdiction to hear and determine whether to approve or disapprove the compromise. California Rules of Court, rule 19, subdivision (d)[12] provides a mechanism for referring the matter to the trial court for the limited purpose of determining whether the proposed compromise is in the best interests of the minor and reporting its findings to the Court of Appeal which must make the final determination of approving or disapproving the compromise.

The Shasta County Superior Court purported to approve the petition for compromise of minor's claim and enter an order compromising minor's claim subject to the Court of Appeal finding the settlement to be one effectuated in good faith pursuant to Code of Civil Procedure section 877.6. The Shasta County Superior Court clearly lacked jurisdiction to address the petition. (Code Civ. Proc., § 372.) Its purported order was therefore void *ab initio*.[13]

At no time has this court approved any minor's compromise in this matter. Such approval is a prerequisite to a valid settlement. Since there never was a valid approval of minor's compromise no legally valid settlement exists. A fortiori, no determination of a good faith settlement (Code Civ. Proc., § 877.6) may be entered.

---

[11]Code of Civil Procedure section 372 provides in relevant part that a guardian ad litem "shall have power, *with the approval of the court in which the action or proceeding is pending,* to compromise the same, to agree to the order or judgment to be entered therein for or against the ward or conservatee, and to satisfy any judgment or order in favor of the ward . . . or release or discharge any claim of the ward . . . pursuant to such compromise . . . ." (Italics added.)

[12]California Rules of Court, rule 19, subdivision (d) states: "Whenever the guardian of a minor or of an insane or incompetent person seeks approval of a proposed compromise of a case pending on appeal, the reviewing court may, by order, refer the matter to the trial court with instructions to hear the same and determine whether the proposed compromise is for the best interests of the ward, and to report its findings. On receipt of the report, *the reviewing court shall make its order approving or disapproving the compromise.*" (Italics added.)

[13]Factually, the trial court on its own motion, declared the original purported order approving the compromise invalid.

To summarize, if parties to an action pending on appeal desire to compromise a minor's claim pursuant to Code of Civil Procedure section 372, it must be done by petition filed in the appellate court. The appellate court then either, (1) approves or disapproves of the compromise forthwith or (2) refers the matter to the trial court for a report, receives a report back from the trial court and then the appellate court approves or disapproves the compromise. In any event the appellate court, not the trial court, approves or disapproves the compromise of minor's claim when the action is pending on appeal. The parties did not follow this procedure in the instant case.

The petition for writ of mandate is denied.

Regan, Acting P. J., and Carr, J., concurred.

Petitions for a rehearing were denied May 7, 1985, and the petition of defendant and appellant for review by the Supreme Court was denied June 19, 1985.