Filed 8/22/14 Lovelace v. Pneumo Abex CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MICHAEL LOVELACE, | C072371 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 34201100104560CUASGDS) |
| PNEUMO ABEX LLC, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendant and Appellant. | |
| | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion filed July 25, 2014, in the above cause is modified in the following respects:

Footnote 4 on page 12 is changed to read:

Our conclusion the testimony provided by James and his expert witnesses constitutes sufficient evidence to support the judgment obviates the need to consider James's contention the evidence can also be found sufficient based on Abex's participation in the Saranac agreement. As to Abex's claim that James's counsel committed misconduct during closing arguments before the jury, we deem the issue forfeited for failure to cite any legal authority on the issue of misconduct. "When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.* (2006) 138

1

Cal.App.4th 396, 408, quoting *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635,

647.)  Accordingly, we pass on the issue without discussion.

This modification does not change the judgment.

The petition for rehearing is denied.


    NICHOLSON   , Acting P.J.


      HULL      , J.


      HOCH     , J.

Filed 7/25/14  Lovelace v. Pneumo Abex CA3 (unmodified version)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MICHAEL LOVELACE, | |
| Plaintiff and Respondent, | C072371 |
| v. | (Super. Ct. No. 34201100104560CUASGDS) |
| PNEUMO ABEX LLC, | |
| Defendant and Appellant. | |

A jury determined James A. Lovelace contracted pleural mesothelioma due to asbestos exposure and awarded him $2,072,164 in economic and noneconomic damages.[1] The jury apportioned 13 percent of the fault to Pneumo Abex LLC (Abex), a manufacturer of automobile brake parts that contained asbestos.  On appeal, Abex contends:  (1)  The trial court's mid-trial application of *Campbell v. Ford Motor Co.* (2012) 206 Cal.App.4th 15 (*Campbell*), which had been published only recently,

---

[1]     After judgment was entered in his favor, James A. Lovelace died.  Thereafter, his son (Michael Lovelace) filed a motion to continue as his father's successor in interest pursuant to Code of Civil Procedure section 377.32.  The motion to substitute Michael Lovelace, successor in interest to James A. Lovelace, as respondent is granted.

        To distinguish plaintiff from his successor in interest, we refer to plaintiff as James.

1

constituted an unfair surprise that threw Abex's defense "into disarray." (2) Insufficient evidence supported the jury's finding Abex is responsible for 13 percent of the fault for James's injuries.

We reject Abex's claim the trial court erred by applying *Campbell, supra,* 206 Cal.App.4th 15 during trial. Abex has not addressed the second ground on which the trial court based its decision, namely, that Abex failed to demonstrate due diligence in failing to request a continuance of trial. That separate ground suffices to affirm the denial of the motion for new trial. We conclude substantial evidence supported the jury's finding Abex was 13 percent at fault for James's injuries. Accordingly, we affirm.

BACKGROUND

*James's In Limine Motion Based on Campbell v. Ford Motor Company*

Issued on May 21, 2012, *Campbell*, *supra*, 206 Cal.App.4th 15, held for the first time in California that a property owner has no legal duty to protect family members of workers on its premises from secondary exposure to asbestos brought home on employees' clothes. (*Id.* at p. 29.) On May 23, 2012, the trial court heard an in limine motion by James to apply the holding of *Campbell*. James's counsel argued *Campbell* precluded placing Johns-Manville onto the special verdict form. The trial court took the matter under submission.

*James's Evidence Regarding Abex Products*

At trial, Dr. Barry Horn testified as an expert on asbestos-related illnesses. He explained James contracted pleural mesothelioma due to exposure to asbestos-containing products. James testified that between 1950 and 1980 he was exposed to asbestos-containing products made by manufacturers that included Abex, Raybestos, and Bendix. Specifically as to Abex, James adjusted numerous brakes made by Abex. James breathed the dust from Abex products because he compressed air to blow the asbestos dust off the brake drums when adjusting the brakes. At other times, James ground and sanded new Abex brake shoes to match the arc of the brake drum. He breathed this dust too. James

2

did not use a dust mask or respirator because he did not see any cautionary labels on Abex products or the boxes in which they came.  James also believed he was exposed to asbestos dust in his work as a plumber and his work on heating- and air-conditioning systems.

Allan Smith, a professor of epidemiology, testified 80 to 90 percent of pleural mesothelioma cases in adult men are "due to asbestos dust."  Professor Smith explained that "[w]orkplace associations became clear pretty quickly, but over the years it's also been demonstrated that the asbestos fibers going from a workplace to a surrounding neighborhood or on the clothes of a worker, getting dust in the homes, can also cause mesothelioma."  When a person has been exposed to multiple types of asbestos dust throughout life, it is not possible to determine which particular fibers caused the disease.  Instead, "[a]ll asbestos dust inhaled adds to the risk of mesothelioma."  Professor Smith rejected as "bad science" a study that concluded asbestos dust from brake shoes did not cause mesothelioma.

### Defendant's Evidence

Abex called several witnesses who testified the dust from Abex's products did not contribute to James's mesothelioma.  Mary Finn, a certified industrial hygienist, concluded that "any exposure [James] may have had to Abex products did not increase his risk of pleural mesothelioma."  However, James's exposure to crocidolite, a more potent form of asbestos used by his father's employer, Johns-Manville, would have increased his risk of mesothelioma.

Andrew Churg, an anatomic pathologist, agreed James suffers from pleural mesothelioma.  Dr. Churg testified James's mesothelioma was likely caused by the amphibole, crocidolite, and amosite forms of asbestos.  However, the chrysotile form of asbestos did not contribute to his disease.  Chrysotile is an unstable form that breaks up very rapidly in the lungs –- in as few as 11 days in rats.  By contrast, lung biopsies of rats exposed to amosite and crocidolite fibers showed bioperseverance (remaining in lung

3

tissue) even after a year. Crocidolite is more potent than chrysotile "by a factor of five hundred." It "takes an enormous amount" of chrysotile to produce mesothelioma in humans. The amount of exposure of a full-time brake mechanic to chrysotile asbestos would be insufficient to cause mesothelioma. Secondary exposure to clothing brought home from the Johns-Manville plant at which James's father worked would have contributed to the risk of mesothelioma due to the plant's use of crocidolite.

David Weill, a pulmonologist, testified the asbestos from working on brakes did not elevate James's risk of mesothelioma. However, the forms of asbestos at the Johns-Manville plant at which his father worked and the asbestos from James's work as a plumber did contribute to his mesothelioma. Likewise David Garabrant, a physician and professor of epidemiology, testified, "there is not evidence that low level exposures, such as brake mechanics would experience changing an asbestos-containing brake are at an increased risk for mesothelioma."

### *Abex's Motions for Mistrial*

During trial, the court ruled Abex could introduce evidence "to the effect" that "not only was Abex's product not a cause of the harm but that there [was] at least one other product out there that was." However, the trial court refused to allow Johns-Manville to be placed on the special verdict form. Abex moved for a mistrial on grounds it was unable to assign fault to Johns-Manville and it would leave the jury "wondering, well, what happened to Johns-Manville?"

During closing arguments, James's counsel told the jury: "I have a surprise for you." Counsel argued the exhibits introduced at trial showed a secret agreement made in Saranac, New York, among companies including Abex and Johns-Manville to conceal the results of studies showing asbestos caused tumors and cancer. In addition to castigating Abex and Raybestos for producing an unsafe product, James's counsel urged the jury to apportion 39 percent fault each to Abex and Raybestos because they were "in on" studies showing the dangers of asbestos.

4

Abex again moved for mistrial on the basis of the argument it was liable for damages based on the Saranac agreement. Pointing out James's counsel acknowledged Johns-Manville to have been a signatory to the agreement, Abex argued it was unfair to keep Johns-Manville off the verdict form. The trial court found no basis for imposing liability on Johns-Manville in the absence of any legal duty. Thus, the court denied the motion for mistrial and excluded Johns-Manville from the verdict form.

The special verdict allowed the jury to apportion fault to Abex, Raybestos, numerous other named companies, "Other Vehicle Manufacturers," and "Asbestos Plumbing Products." Johns-Manville was not included. Moreover, the jury was instructed that in determining the "percentage of responsibility for [James's] harm," the percentages on the special verdict form "[t]he total must equal 100%." The jury complied and apportioned 100 percent of the fault to the named companies, allocating 13 percent of the fault to Abex.

### *Motions for New Trial and Judgment Notwithstanding the Verdict (JNOV)*

After entry of judgment, Abex moved for a new trial and JNOV. The motion for new trial was premised on the trial court's exclusion of Johns-Manville from the special verdict form. And, the motion for JNOV asserted insufficient evidence established Abex's products caused or contributed to James's mesothelioma. James's counsel filed opposition, and the trial court denied both motions.

In denying the motion for new trial, the trial court recounted it had "ruled that evidence regarding 'take-home exposures' at Johns-Manville could be introduced so the jury could consider it for causation purposes but not for apportionment of fault attribution." The trial court noted Abex did not deny *Campbell, supra,* 206 Cal.App.4th 15 barred the imposition of any tort liability on Johns-Manville. Thus, the court concluded, "Abex has failed to demonstrate any adverse material effect on its case as a result of the elimination of Johns-Manville on the verdict form."

In denying Abex's motion for JNOV, the trial court explained: "Abex presents a selective version of the evidence, mostly its own, and asserts its evidence, including that solicited on [James's] cross-examination should be given the most weight. However, there was substantial evidence to support the jury's finding that it was more likely than not [James] was exposed to an asbestos-containing product attributable to Abex. There was substantial evidence [James] was exposed to Abex brake dust from sanding, grinding, and blowing out Abex drum brakes. For example, [James] testified to buying Abex brakes over the years and grinding or sanding the brakes which produced dust that he breathed." He testified "Abex" was written on the brake linings. He also confirmed an advertisement for Abex brakes that showed "Abex" printed on the brake lining material was an accurate description of the linings he installed and removed over the years. "Disregarding Abex's evidence as it must on a JNOV, and indulging every reasonable inference in [James's] favor, there was substantial evidence to support a finding that [James] was exposed to Abex products."

Abex has timely filed a notice of appeal challenging the trial court's denial of its motions for new trial and JNOV.

DISCUSSION

I

### Application of the Holding in Campbell v. Ford Motor Company During Trial

Abex contends the judgment must be reversed "based on the [trial] court's prejudicial decision to apply *Campbell* mid-trial." Abex characterizes "the publication of *Campbell*" as "[a]n unexpected event beyond Abex's control" with the effect that Abex "is forced in mid-trial to reshape and dramatically truncate its defense presentation." Abex states it "does not attack the *Campbell* decision, nor dispute that the trial court correctly applied that decision to the facts of this case. Abex's appeal, rather, is focused on the *timing* and *procedural* inequities stemming from the trial court's application of

6

*Campbell* coming, as it did, after opening statements and during the evidentiary phase of the trial." We reject this procedural argument for lack of prejudice.[2]

In arguing the surprise publication of *Campbell, supra,* 206 Cal.App.4th 15 prejudiced its ability to present a proper defense, Abex does not address a separate basis given by the trial court for denying the motion for new trial. The order denying the motion for new trial states: "*In addition*, the Court finds that Abex failed to establish a record of due diligence as required for a motion pursuant to [Code of Civil Procedure section] 657(3). Specifically, although it was aware of Campbell prior to jury selection and opening arguments, there is no record that Abex ever requested a trial continuance to adjust its trial strategy. Instead, it requested a mistrial which this Court denied multiple times." (Italics added.)

We begin by presuming the trial court's decision to be correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) An appellant has the burden to demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) And, issues not raised in an appellant's opening brief are deemed abandoned. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466.)

---

[2] Although Abex's opening brief may be construed to complain about the omission of Johns-Manville from the special verdict form, Abex's reply brief clearly disavows any claim of error pertaining to the special verdict form by stating: "The trial court did not abuse its discretion when it decided that *Campbell* required Johns-Manville to be removed from consideration as one of the potential tortfeasors to whom fault could be allocated by the jury, but it did abuse its discretion by making the ruling and forcing Abex to remain in trial before a jury which had been already conditioned to perceive Johns-Manville as the sole responsible party to whom 100% fault should be allocated." Later, the reply brief states, "Abex has not argued, as [James] suggests, that the trial court's decision to keep Johns-Manville off the jury verdict form as a potentially culpable tortfeasor was error, such that its motions for mistrial and/or new trial should have been granted. Rather, the *timing* of the decision -- in the middle of trial, after opening statements have been made -- and the prejudicial impact it had on Abex's defense were reasons enough to justify a 'restart' of trial." Thus, Abex narrows its argument regarding the application of *Campbell, supra,* 206 Cal.App.4th 15 to encompass only the aspect of having to formulate a "new defense" during trial.

7

Abex does not acknowledge or discuss this second ground for the trial court's denial of the motion for new trial –- i.e., failure to move for a continuance. Even if Abex were correct that the application of *Campbell, supra,* 206 Cal.App.4th 15 during trial came as a surprise, we would nonetheless be compelled to affirm because there is a separate, presumptively correct basis for the trial court's decision. (See *Bradbury Estate Co. v. Carroll* (1929) 98 Cal.App. 145, 153 ["[T]he rule is well established that a motion for a new trial on the ground of accident or surprise is properly denied where a continuance is not asked"].) A single valid basis for the trial court's decision suffices to affirm the denial of a motion for new trial. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376; *Waller v. TJD, Inc*. (1993) 12 Cal.App.4th 830, 833.)

At oral argument, Abex asserted its motion for mistrial should have the same effect as the requisite motion for continuance based on surprise. We reject the assertion. A motion for mistrial should be granted only when a party is prejudiced by an error occurring during trial that cannot be cured by instructing or admonishing the jury. (*People v. Lewis* (2008) 43 Cal.4th 415, 501, overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919.) Abex asserted it properly moved for mistrial based on the trial court's surprise application of *Campbell, supra*, 206 Cal.App.4th 15. However, Abex conceded at oral argument it does not challenge the applicability of *Campbell* to this case.[3] A trial court does not err by applying case law acknowledged by all parties to be germane and valid. The essence of Abex's argument is that it was unfairly surprised. However, the remedy for surprise application of new and valid law is properly provided by a continuance rather than mistrial. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 946, fn. 4 [noting a motion for mistrial does not preserve for review a procedural problem for

---

[3]    Based on the undisputed applicability and validity of *Campbell* to this case, we need not resolve whether recent decisions in *Kesner v. Superior Court* (2014) 226 Cal.App.4th 251, 255 and *Haver v. BNSF Railway Co*. (2014) 226 Cal.App.4th 1104, have changed secondary exposure tort duties as applied to Johns-Manville under the facts of this case.

8

which mistrial is not the remedy].)  A motion for continuance would not have been futile. We note Code of Civil Procedure section 36, subdivision (f), expressly provides for a 15-day continuance upon a showing of good cause even in a case entitled to preference.

Based on the trial court's unchallenged, second ground for denial of Abex's motion for new trial, we reject Abex's contention for lack of prejudice.

## II

### *Substantial Evidence Claim*

Abex contends the evidence is insufficient to sustain the jury's allocation of 13 percent of fault to Abex.  We reject the argument.

### A.

### *Standard of Review*

In reviewing a challenge to the sufficiency of the evidence in support of the jury's allocation of fault among tortfeasors, we "resolve all conflicts in the evidence in favor of respondent, and indulge all legitimate and reasonable inferences in support of the judgment." (*Sparks v. Owens-Illinois, Inc*. (1995) 32 Cal.App.4th 461, 471.)  Under this standard, "[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury.  When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.  (*Crawford v. Southern Pacific Co*. (1935) 3 Cal.2d 427, 429; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Stevens v. Parke, Davis & Co*., *supra,* 9 Cal.3d 51, 63-64.)  It is the province of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses.  The jury may accept part of the testimony of a witness and reject another part.  (*Stevens v. Parke, Davis & Co., supra* at p. 67.)" (*Metzger v. Barnes* (1977) 74 Cal.App.3d 6, 9.)

**B.**

***Sufficiency of the Evidence Regarding Abex's 13 Percent Allocation of Fault***

James introduced sufficient evidence to support the jury's allocation of 13 percent fault to Abex. Professor Smith testified as an expert on epidemiology and explained the overwhelming number of cases of pleural mesothelioma in adult men are caused by exposure to asbestos dust. In Professor Smith's opinion there was no doubt chrysotile –- the form of asbestos contained in Abex's brake products –- causes mesothelioma. Based on the quantity and types of asbestos to which James was exposed as a plumber and truck mechanic, James would have suffered an increase in his risk of mesothelioma from all sources of asbestos. Although secondary exposure to his father's asbestos from the Johns-Manville plant would have contributed to James's risk, such secondary exposure would not have "somehow exclude[d] all other of the asbestos exposures as a cause of his mesothelioma." On the basis of studies, including a recent study of exposures to chrysotile miners in Italy, Professor Smith rejected the hypothesis chrysotile did not cause mesothelioma. As to the Italian study, Professor Smith explained: "That's just one example that *certainly* chrysotile asbestos dust does cause mesothelioma." (Italics added.) Any assertion chrysotile dust exposure does not contribute to mesothelioma "just flies in the face of scientific evidence."

Professor Smith's testimony was echoed by Dr. Horn, who also explained there was no doubt James had mesothelioma and exposure to asbestos was the only known cause of mesothelioma in the United States. Dr. Horn considered James's exposures to Johns-Manville asbestos fibers and Abex asbestos fibers. He concluded that "all of that exposure contributes to the risk for the development of mesothelioma." Given James's exposure to Abex brake dust blown into the air with a compressor and due to sanding the brake shoes, Dr. Horn concluded the brakes James worked on substantially contributed to the mesothelioma. James himself testified he worked on brakes for 30 years and could not estimate how many vehicles he worked on because it was "a lot." James recalled

seeing Abex labels on parts and boxes during those years.  The testimony amply supported the apportionment of 13 percent of fault to Abex.

Abex contends its own experts refuted the proposition the chrysotile exposure from its products contributed in any way to James's mesothelioma.  We reject the contention.

We note Abex has presented a one-sided version of the statement of facts that favors its evidence and barely acknowledges James's evidence.  However, in every appeal "the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment."  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  We would be justified in deeming the insufficiency of the evidence argument forfeited for failure to set forth a statement of the facts in support of the judgment.  In any event, Abex's argument has no merit because it asks us to reweigh the expert testimony to conclude Abex's experts were more credible on the issue of whether chrysotile asbestos exposure causes mesothelioma.  We do not reweigh witness credibility on appeal.  (*Metzger v. Barnes*, *supra*, 74 Cal.App.3d at p. 9.)

We also reject Abex's contention that James's case was premised only on 10 sets of Abex brakes.  In support, Abex cites to the cross-examination of James in which he admitted he had difficulty remembering exactly how many Abex brake sets he worked on because of how long ago the exposure took place.  Abex also emphasizes the fact James remembered other brake manufacturers as well.  However, Abex ignores James's testimony he knew he was breathing Abex brake dust because "sometimes it said Abex on the brake."  At other times, James saw the parts come in boxes marked "Abex." James worked on Abex brakes for cars and diesel trucks.  James's inability to quantify the number of Abex brakes he worked on over the course of 30 years does not render the evidence insufficient.  To the contrary, the expert testimony linking chrysotile asbestos combined with James's testimony about working on "a lot" of brakes that included

11

Abex's provided substantial evidence in support of the jury's allocation of 13 percent of fault to Abex.[4]

## DISPOSITION

The judgment is affirmed. Michael Lovelace shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).

                                            HOCH    , J.

We concur:


    NICHOLSON    , Acting P. J.


      HULL      , J.

---

[4] Our conclusion the testimony provided by James and his expert witnesses constitutes sufficient evidence to support the judgment obviates the need to consider James's contention the evidence can also be found sufficient based on Abex's participation in the Saranac agreement.