GAPSKE *v.* HATCH.

1. APPEAL AND ERROR—DIRECTED VERDICT—JUDGMENT NON OBSTANTE
   VEREDICTO—EVIDENCE.
   Evidence is considered by Supreme Court from the point of
   view most favorable to plaintiff who prevailed when defendant
   moved for directed verdict and for judgment *non obstante vere-
   dicto.*

2. NEGLIGENCE—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.
   Negligence may be inferred from circumstantial evidence as well
   as from direct proofs.

3. APPEAL AND ERROR—DIRECTED VERDICT—INFERENCES.
   Those legitimate inferences which most favor plaintiff must
   be accepted on defendant's appeal from denial of his motion
   for a directed verdict.

4. AUTOMOBILES—NEGLIGENCE—CONTRIBUTORY  NEGLIGENCE—PEDES-
   TRIAN ON STREET SIDE OF PARKED CAR.
   Evidence presented in pedestrian's action against taxicab opera-
   tor, that plaintiff was hit while he was standing near the
   driver's door on the street side of his parked car when hit by
   defendant's taxicab with only his "dims" on at about 2 a.m.,
   *held,* sufficient to present question for jury as to whether or not
   defendant was guilty of negligence and plaintiff free from con-
   tributory negligence proximately causing plaintiff's injuries.

5. SAME—PEDESTRIANS—ANTICIPATION OF NEGLIGENT CONDUCT.
   A pedestrian must take reasonable precautions for his own
   safety but he is not required to anticipate negligent conduct on
   the part of a motorist.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 3 Am Jur, Appeal and Error § 944 *et seq.*
[2] 38 Am Jur, Negligence § 333.
[4] 5A Am Jur, Automobiles and Highway Traffic § 450.
[5] 5A Am Jur, Automobiles and Highway Traffic §§ 746, 747.
[6] 5A Am Jur, Automobiles and Highway Traffic § 451.
[7] 39 Am Jur, New Trial § 26 *et seq.*

6. SAME—PEDESTRIANS—INSTRUCTIONS—ASSURED CLEAR DISTANCE AHEAD—SUDDEN EMERGENCY.

It was prejudicial error for trial court to charge that defendant taxicab operator was negligent if he so drove his car as to be unable to stop within the assured clear distance ahead as he was bound to anticipate meeting other vehicles or pedestrians in the street and keep a proper lookout, where there was testimony and request to charge, but no instruction made, that plaintiff appeared from a point of concealment in front of his car into defendant's assured clear distance thereby confronting defendant with a sudden emergency, an exception to the assured clear distance rule (CLS 1954, § 257.627).

7. NEW TRIAL—SUPREME COURT—DISCRETION OF COURT.

The Supreme Court will order a new trial, where in the exercise of a sound discretion, it appears that it will best serve the ends of justice.

8. COSTS—APPEAL—NEW TRIAL.

No costs are allowed on appeal, where neither party has prevailed entirely; trial costs abiding ultimate result on new trial granted.

Appeal from Alpena; Glennie (Philip J.), J. Submitted June 13, 1956. (Docket No. 1, Calendar No. 46,683.) Decided February 28, 1957.

Case by Gerald H. Gapske against Richard R. Hatch, doing business as the Hatch Cab Company, for personal injuries sustained when struck by taxicab. Verdict and judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Isadore Isackson,* for plaintiff.

*Donald M. Habermehl,* for defendant.

EDWARDS, J. This case was tried before a jury with the result of a judgment for the plaintiff in the sum of $6,500.

The accident which produced this litigation occurred on May 27, 1953, at about 2 a.m., in the city of Alpena, Michigan.

Plaintiff and a friend had spent the late evening working on copy for a bowling program which was to be printed at plaintiff's small print shop. Their labors had been lightened for both by several bottles of beer, but there is no testimony in this record which indicates that plaintiff was under the influence of liquor at the time of the accident. At approximately 2 a.m. plaintiff started from the door of his print shop, walking north on North Second avenue toward the apartment where he lived, when, according to his testimony, he recalled that he had left his car parked at the curb in front of the print shop rather than in the parking lot which he asserts to have been his usual custom.

Plaintiff testified he turned around, walked back toward his automobile, looked as he got to the curb and saw nothing, walked across in front of his car with the intention of entering from the driver's door which was toward the street side. Plaintiff's testimony carries him to some ill-defined point in the general vicinity of the front left-hand fender of his automobile and stops there, since he asserts that he remembers nothing else until he subsequently recovered consciousness after the accident.

There is no medical testimony in this record pertaining to plaintiff's claimed loss of memory and (presumably for that reason) no presumption of due care is urged. *Gillett* v. *Michigan United Traction Co.*, 205 Mich 410; *Breker* v. *Rosema*, 301 Mich 685 (141 ALR 867).

No one saw the impact of the taxi with this pedestrian, including the participants therein. To ascertain what defendant was doing we must turn to his testimony. He testified, when called for cross-examination under the statute,* that he was en route to pick up a passenger in his cab, that he was travel-

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—Reporter.

ing north on North Second avenue at a speed of from 20 to 25 miles an hour, and that he had his "dims" on. He saw plaintiff's car from several hundred feet back, that he passed it at a distance of 4 feet out in the street, that as he was passing it he heard a thud and immediately brought his car to a stop, whereupon he for the first time saw the plaintiff lying near the curb in front of his own car where the impact had apparently thrown him.

The defendant's car was damaged in the area of the right front fender. The right front headlight and the right-hand side of the windshield were broken.

Testimony of eyewitnesses after the event and photographic exhibits introduced at trial indicated that there were some "shiny marks" on the left front fender of the plaintiff's car as it stood parked at the curb, such marks being visible in the photographic exhibit taken on the night in question at the bottom rear portion of the left front fender and on top of said fender.

The photographic exhibits taken on the night in question demonstrated skid marks on the pavement. Those shown plainly in exhibit 2 would serve to support defendant's testimony that he was driving approximately 3 feet in the street from the white line marking off the parking area (and 4 feet from plaintiff's parked car), except for the fact that no witness conclusively tied these skid marks to the defendant's automobile, or traced them back to their point of origin or the point of impact.

Another bit of circumstantial evidence which was the subject of much comment in oral argument and in the briefs was represented by the introduction in evidence, over defendant's objection, of a jacket which plaintiff testified he was wearing on the night of the accident. It appears that when this jacket was introduced at the time of trial, on the right side

thereof there was a "circular mark." Plaintiff testified in relation to this that the mark in question had not been there prior to the accident and, over objection, continued:

"This jacket was shown to me, and I noticed that immediately, and I only blamed it to that fact, that is where I got hit."

The plaintiff's principal injuries were multiple fractures of his right leg, which required 2 operations and the wearing of crutches for about 8 months. There was medical testimony that plaintiff would suffer some discomfort into the future when he stood for a long period of time which his occupation as a printer required.

After plaintiff rested defendant did likewise, offering no additional proofs.

The case was submitted to the jury with 2 special questions:

"1. Do you find that the defendant, Richard Hatch, was negligent in the operation of his automobile?
"2. Do you find that the plaintiff, Gerald Gapske, was entirely free from any negligence that contributed to this accident?"

In addition to the verdict of $6,500, referred to above, the jury returned affirmative answers to these 2 questions.

Defendant's appeal to this Court is based on the trial judge's refusal to direct a verdict, his denial of a motion for a judgment *non obstante veredicto,* and his denial of a motion for a new trial.

In considering the first 2 of these motions on appeal, we consider the evidence from the point of view most favorable to the party which prevailed before the jury below. *Canning* v. *Cunningham,* 322 Mich 182; *Cabana* v. *City of Hart,* 327 Mich 287 (19 ALR2d 333); *Miller* v. *Pillow,* 337 Mich 262.

Defendant argued strenuously before the trial court and here that there were no facts from which the jury could have found negligence on the part of defendant which was the proximate cause of plaintiff's injuries, or freedom from contributory negligence on the part of plaintiff. The record, recited above, is ample justification that there is no direct evidence from which such conclusions could have been drawn. Our question then becomes whether or not there was evidence from which the jury might fairly have inferred plaintiff's freedom from negligence which contributed as a proximate cause to the happening of the accident, and negligence on the part of the defendant which was a proximate cause.

Plaintiff's theory of the happening of this accident, as argued before the trial court and here, was that this accident occurred after plaintiff had stepped from the curb, walked in front of his parked automobile, walked to the door of his automobile and turned to face and open it. Under this theory, plaintiff had been in the vicinity of his own car door an appreciable period of time and plainly visible to defendant when defendant, failing to keep a proper lookout and avoid what was there, ran him down.

Defendant's theory of the accident is quite contrary. Under it, he, the defendant, was proceeding north on North Second avenue at a legal rate of speed, in his proper lane, and passing plaintiff's automobile at a reasonable distance out in the street, when plaintiff suddenly and unexpectedly appeared from a position in front of his own car where he had been obscured from view and came directly into the path of defendant's vehicle without defendant having even so much as the opportunity to see him before the impact.

The crucial question obviously becomes whether the point of impact was in the immediate vicinity of the plaintiff's car door and the white line indicat-

ing the parking area as contended by the plaintiff, or whether the point of impact was at least 3 feet farther out in the street and in a general line with the front of plaintiff's automobile as contended by the defendant.

Considering the testimony from the point of view favorable to the plaintiff as indicated above, these facts are in the record:

Plaintiff's injuries were multiple fractures of his right leg. There was a mark on the right side of the jacket worn on the night in question which was not there before the accident. There were shiny marks on the bottom and top of the left front fender of plaintiff's car immediately ahead of his left door, which appeared to a witness to be fresh. After the accident plaintiff was observed lying "close to the east curb and about 6 to 8 feet from the front of his parked car." If we add to the above the facts that when defendant was called under the statute he testified that he never saw plaintiff at all until after the accident, that he was "just about opposite the car" when he heard the "thud," and that at the time of the accident he "more than likely" had his "dims" on, we have a summary of all of the relevant facts from which the jury could have inferred answers to the special questions submitted.

It is well-established law in Michigan that negligence may be inferred from circumstantial evidence as well as from direct proofs; and that, on defendant's appeal from a denied motion for a directed verdict, those legitimate inferences which most favor the plaintiff must be accepted. *Anderson* v. *Kearly,* 312 Mich 566; *Cebulak* v. *Lewis,* 320 Mich 710 (5 ALR2d 186); *Spiers* v. *Martin,* 336 Mich 613; *Kaminski* v. *Grand Trunk Western Railroad Co.,* 347 Mich 417.

We give little weight in our determination of this question to the circular mark and to the fact that

plaintiff's injuries were to his right leg. No testimony was even attempted relating the circular mark to defendant's headlight, and plaintiff's quoted testimony on this point is patently an inadmissible conclusion. Nor was any effort made to examine the doctor on his opinion, if any, as to the direction, in relation to plaintiff's body, from which the blow which injured him came.

We believe, however, from a careful examination of exhibit 1, the picture of plaintiff's car taken on the night of the accident, that the jury might fairly have inferred that the marks thereon were occasioned by plaintiff being thrown by the impact with defendant's car against his own, over the left front fender, to the position in the street where he was subsequently observed. Under the favorable view of this evidence, a line from the location of plaintiff after the accident back across the left front fender would place the point of impact in the immediate vicinity of plaintiff's car door, consistent with plaintiff's theory of the point of impact rather than defendant's. Such a view of the facts would likewise mean that defendant's failure to see plaintiff in the street at that location, where he must have been for a period of time sufficient for normal observation, coupled with defendant's admitted striking of the plaintiff, could represent negligence which the jury could well have found a proximate cause of plaintiff's injury.

This same view of facts leads us to conclude that there was testimony from which the jury could likewise have found plaintiff free from negligence which contributed as a proximate cause to the happening of the accident. The additional factor of defendant testifying to having his "dims" on might well have been considered by the jury in determining whether or not plaintiff acted like a reasonable and prudent person in making proper observation before proceeding around the front end of his car to the vicinity

of his car door. We find little merit in defendant's contention that it is negligent conduct as a matter of law on the part of a person, after proper observation, to seek to enter his automobile from the driver or street side. On the contrary, we feel that this question is properly left to the jury's determination, to be tested against its view of what a reasonably prudent person might have done under similar circumstances.

The evidence here is such as to allow the jury to find that plaintiff looked before he stepped into the street and that he had reached the immediate vicinity of his left car door before he was struck by defendant driving extremely close to his parked car. Obviously, too, the fact that defendant had his "dims" on had a bearing on whether or not plaintiff had made reasonable observation, and, hence, was a proper subject for jury consideration.

While he must take reasonable precautions for his own safety, plaintiff is not required to anticipate negligent conduct on the part of another. *Paton* v. *Stealy*, 272 Mich 57; *Patterson* v. *Jacobs*, 289 Mich 351; *Craddock* v. *Torrence Oil Co.*, 322 Mich 510.

This Court holds that the issue of whether or not a plaintiff was free from negligence which contributed as a proximate cause to the happening of his injury was a question of fact for the jury, there being evidence from which an affirmative finding could have been made or legitimately inferred. We conclude that the trial judge properly denied the motion for directed verdict and, similarly, properly denied the motion for judgment *non obstante veredicto*.

With all of the above having been said, it is obvious that this was an extremely close case on such meager facts as were presented to the jury. While it is no universal solvent of all disputes, this Court believes this case would have benefited greatly from

application of the much-quoted advice of an old trial lawyer, "Study the facts  *  *  *  and the law will take care of itself." Powell, "I Can Go Home Again" (1943), p 141.

Nothing presumably could have served to provide an eyewitness account of what actually happened, but many fascinating questions still remain open on review of this record. Some of them are: Why no more effort was made to relate the defendant's car to the skid marks, or the skid marks to the point of impact. The record offers no explanation as to why neither party called the second police officer who had reported to the scene. As noted, plaintiff failed to examine his doctor on the direction, in relation to plaintiff's body, from which the injuring blow came, and, likewise, to relate in any fashion the so-called circular mark on the jacket to a portion of defendant's automobile.

We have in mind these and other unanswered questions and the relatively weak proofs recited as we approach the defendant's claim of prejudicial error, the last of his bases for appeal, which we are required to consider here:

Defendant claims error in the trial judge's refusal of his motion for a new trial. The fifth ground recited therefor before the trial court was as follows:

"5. Because the court erred in instructing the jury as follows: 'If you find that the defendant did not have his automobile under control, and drove it at such a rate of speed that he was unable to stop it within the assured clear distance ahead, that is, within the range of his lights, and prevent the accident, then he would be guilty of negligence.  *  *  * He is bound to anticipate that he may meet other vehicles or pedestrians at any point in the street, and he must keep a proper lookout for them.' "

Defendant's theory of this accident, as noted above, was that plaintiff came suddenly and unexpectedly

into his (the defendant's) path from a place where he had been previously concealed by his (the plaintiff's) own automobile. The jury was entitled to have before it during its consideration of the case both plaintiff's and defendant's theories (where, as here, there was evidence to support them) and the law applicable thereto. *Sword* v. *Keith,* 31 Mich 247; *Poole* v. *Consolidated Street Railway Co.,* 100 Mich 379 (25 LRA 744, 4 Am Neg Cas 169); *Webber* v. *Park Auto Transportation Co.,* 138 Wash 325 (244 P 718, 47 ALR 590); 53 Am Jur, Trial, § 626, p 487.

In this otherwise fair and adequate charge, we cannot find at any point that the judge, although requested to do so, instructed the jury that any sudden and unexpected entrance from a point of concealment into defendant's assured clear distance ahead would constitute a sudden emergency and, hence, an exception to the assured clear distance rule. Patently, defendant should not be held liable for negligence for striking that which under his theory of the facts he could not see and could not avoid.

31 ALR2d, pp 1434, 1435, says on this point:

"Although the 'assured clear distance ahead' rule contemplates continuous operation of a motor vehicle at such a speed that discernible objects in the path or lane of travel may be avoided by the driver, it does not require the driver to so drive as to be able to avoid a pedestrian who suddenly appears in his lane of travel or line of vision at an intermediate point in such assured clear distance ahead."

See, also, *Corpron* v. *Skiprick,* 334 Mich 311; *Barner* v. *Kish,* 341 Mich 501; CLS 1954, § 257.627 (Stat Ann 1952 Rev § 9.2327).

We feel on a review of this record that there were facts from which the jury might have found in ac-

cordance with defendant's theory. As a consequence, they should have had it and the law applicable thereto before them. As this charge stands, the jury may have found the facts as represented by the defendant and still have held him guilty of negligence.

At another point in the charge, discussing contributory negligence, the trial judge did instruct the jury to the effect that the defendant was not an insurer of the safety of the plaintiff and recited plaintiff's duty to observe. Under another factual situation we might not feel that his omission here in his charge on negligence was prejudicial to the result. But under all the circumstances of this case, we feel that the instruction complained of and the omission cited above might well have altered the result and, hence, constituted prejudicial error.

Since there are substantial interests at stake and a new trial may produce an entirely different record, this Court believes it to be in the best interest of justice in this cause for the judgment to be vacated and the cause remanded for a new trial. *Jorgensen* v. *Howland,* 325 Mich 440; *St. John* v. *Nichols,* 331 Mich 148; 39 Am Jur, New Trial, § 28, pp 52, 53.

Neither party having prevailed entirely, no costs are allowed on this appeal. Trial costs will abide the ultimate result.

DETHMERS, C. J., and SHARPE, SMITH, KELLY, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.